COURT OF APPEALS OF VIRGINIA


Present:  Judges Bumgardner, Humphreys and Agee
Argued at Salem, Virginia


ELMER NATHANIEL ADAMS
                                    MEMORANDUM OPINION* BY
v.    Record No. 0138-00-3      JUDGE RUDOLPH BUMGARDNER, III
                                         MARCH 13, 2001
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
                   J. Michael Gamble, Judge

          (James J. Angel, on brief), for appellant.
           Appellant submitting on brief.

          Shelly R. James, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


     A jury convicted Elmer Nathaniel Adams of twenty-four

counts of distribution of cocaine, four counts of possession of

a firearm while in possession of cocaine, and one count of

carnal knowledge of an animal.  The defendant was indicted for

six offenses of possession of a firearm while in possession of

cocaine with intent to distribute it, but two of the indictments

were dismissed.  He contends the evidence was insufficient to

prove any of the four convictions of possession a firearm in

violation of Code § 18.2-308.4.  Concluding the evidence was

sufficient in each instance, we affirm.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

The defendant contends the evidence was insufficient to prove he possessed a working firearm at the same time he possessed cocaine with intent to distribute it. He relies on the fact that no physical evidence of the firearms or the drugs was introduced against him, and he argues the lay witnesses' testimony was insufficient to prove the existence of drugs or a working firearm.

The Commonwealth must prove that the defendant possessed cocaine with intent to distribute it while simultaneously possessing a firearm. The Commonwealth may do this without introducing either the drug or the firearm. Users and addicts may testify as to the nature of a drug, and the actual substance traded need not be admitted into evidence. In Hill v. Commonwealth, 8 Va. App. 60, 379 S.E.2d 134 (1989) (en banc), neither the cocaine nor an analysis of it was admitted into evidence, but circumstantial evidence was sufficient to prove the nature of the illegal substance transferred. "Users and addicts, if they have gained a familiarity or experience with a drug, may identify it. Numerous courts have permitted lay purchasers of drugs to testify as to the identification of drugs after previous use has been demonstrated." Id. at 63, 379 S.E.2d at 136 (citations omitted).

In a similar manner, the Commonwealth can prove the existence of a firearm without offering the tangible object as evidence. In Taylor v. Commonwealth, 33 Va. App. 735, 738, 536

-

S.E.2d 922, 923 (2000), the circumstances surrounding the identification of the firearm provided sufficient evidence to permit an inference that the firearm would function.  The context in which the object appeared gave meaning and definition to the witness' observation and completed the portrayal of its nature.  No evidence suggested the weapon would not function, and the context of the events permitted the reasonable inference that the gun was real, that it functioned.

The four challenged convictions involved transactions between the defendant and Gloria Adams, Michelle Benjamin, Angela Haber, and Daniel Russell.  "On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted).

Gloria Adams was the defendant's ex-wife who moved back into his residence in July 1998.  She started using crack cocaine supplied by the defendant and recounted extensive drug activity at his residence.  Adams testified the defendant possessed several weapons in the house including two handguns and some loaded rifles.  The defendant kept a gun on his person at all times, carrying it in the pouch in which he carried his marijuana, cocaine, and crack cocaine.  On January 30, 1999, after returning from what Adams thought was a cocaine purchase,

-

the defendant placed his gun to her head, and told her "today is the day."

Michelle Benjamin gave the defendant thousands of dollars for crack and bartered silver, gold, radios, tools, and sexual favors for it. She had smoked crack cocaine for five years and was certain what she bought from the defendant was actually crack cocaine. Benjamin testified she had observed the defendant with firearms on several occasions. The Commonwealth's Attorney asked her, "When he had the guns was it at the same time he was giving you or somebody else cocaine?" Benjamin responded, "Yeah. He always carried his gun." The defendant once went to her house and threatened to kill her, or a member of her family, if she did not pay the money she owed him. He had a gun and held the bullet in his hand.

Angela Haber testified she had twice seen the defendant with a gun. The first time, the defendant was at her house and pulled out a black gun about "yea long" and laid it down. She saw the defendant with the gun a second time when he gave her and Debra Wilburn crack cocaine. On that occasion, she saw the defendant with large pieces of crack that she estimated were worth $1,000.

Daniel Russell purchased cocaine from the defendant. One time, after he concluded a purchase from the defendant, someone interrupted them. When the person became obnoxious, the

-

defendant pulled out a three-eighty pistol and aimed it at the person standing only two feet away.

A police officer testified the defendant had threatened to shoot any policeman who entered his property. Adams corroborated this prior threat to the police. She also testified that after his arrest the defendant intended to kill her and the six witnesses who had agreed to testify against him. He also intended to "take [out] as many cops as he could" and then he was going to commit suicide.

The Commonwealth proved the defendant sold crack cocaine from his home over an eight-month period. A total of thirteen witnesses recounted a sordid tale of drugs distributed for cash or sexual favors in an atmosphere of threatened violence. Throughout that time, the defendant possessed drugs for the purpose of distributing them, and he possessed firearms at the same time. Though the police found no drugs or weapons when executing a search warrant at his residence, they did find several types of ammunition.

The defendant essentially challenges the credibility of the Commonwealth's witnesses. He argues they were self-professed drug users, and several had criminal records. The credibility of witnesses and the weight accorded their testimony are determinations within the sole province of the fact finder. Coppola v. Commonwealth, 220 Va. 243, 252, 257 S.E.2d 797, 803 (1979), cert. denied, 444 U.S. 1103 (1980).

-

While the defendant denied he possessed any guns or weapons, the Commonwealth's evidence directly contradicted that claim.  The jury could infer the defendant's self-serving statements were false explanations and designed to conceal his guilt.  Carter v. Commonwealth, 223 Va. 528, 532, 290 S.E.2d 865, 867 (1982); Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

Concluding the evidence was sufficient to convict on each charge of possession of a firearm while in possession of cocaine with the intent to distribute it, we affirm.

Affirmed.

-